## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

CECILIO P. FABELA,                          )
                          Petitioner,   )
v.                                          )          Case No. CIV-05-799-L
                                 )
RON WARD, WARDEN,                           )
                       Respondent.   )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Petition be denied.

### Relevant Case History

Petitioner was charged in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-2001-2464, with First Degree Murder for the death of his wife, Sylvia Fabela. Petitioner was sentenced to life imprisonment without the possibility of parole.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA affirmed Petitioner's conviction by opinion filed June 26, 2003. *See* Response [Doc. #9], Exhibit C, OCCA Opinion.

Petitioner then filed an application for post-conviction relief in the state district court which was denied. *See* Response, Exhibit D. The OCCA affirmed the denial of post-conviction relief on July 11, 2005. *See* Response, Exhibit E.

In this habeas action, Petitioner raises seven grounds for relief:

(1)     Petitioner was denied an impartial jury because the State exercised its peremptory challenges to exclude potential jurors on the basis of race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986);

(2)     The trial court's refusal to give Petitioner's requested jury instructions on issues related to sentencing violated Petitioner's Fourteenth Amendment due process rights;

(3)     Trial errors and prosecutorial misconduct cumulatively denied Petitioner a fundamentally fair trial;

(4)     Petitioner's sentence of life without parole is excessive and violates the Eighth Amendment prohibition against cruel and unusual punishment;

(5)     Petitioner received ineffective assistance of trial counsel;

(6)     The State failed to disclose a toxicology report in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and

(7)     Petitioner received ineffective assistance of appellate counsel.

Grounds One through Four were raised on direct appeal.  Grounds Five, Six and Seven were raised for the first time in Petitioner's state post-conviction application.

## **Standard of Review**

Petitioner's habeas action is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, a petitioner is not entitled to habeas corpus relief if his claim has been adjudicated on the merits by the

highest state court unless the state court's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) & 2254(d)(2). In conducting this inquiry, the factual findings of the state court are presumed correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Relevant Facts**

On April 22, 2001, Petitioner killed his wife, Sylvia Fabela, by striking her multiple times with an ax. Petitioner's children were home at the time, and two of the children gave eyewitness testimony. After killing his wife, Petitioner slit his own throat in an attempt to commit suicide. Paramedics pronounced the victim dead at the scene of the crime. Petitioner was hospitalized and, after recovering from his injury, gave a statement to police admitting that he had killed his wife with the ax.

Petitioner previously had made threats to kill his wife. Approximately one month prior to Sylvia Fabela's death, police were called after an incident in which Petitioner had pointed a loaded gun at her. On the night of her death, police had been contacted twice about Petitioner's potential violence towards his wife. The final 911 call was placed by Petitioner's son who reported that Petitioner had killed his mother with an ax. Additional facts will be addressed as pertinent to the claims raised.

3

**Ground One – Batson Challenge**

In Ground One of the Petition, Petitioner claims the prosecution used peremptory challenges to exclude potential jurors on the basis of race, in violation of his Fourteenth Amendment due process rights, as determined by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986).

To determine whether a *Batson* violation has occurred in the use of peremptory strikes during jury selection, the trial court engages in a three-part analysis.  First, the opponent of a peremptory strike must make a *prima facie* showing that the strike has been exercised on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose."  *Johnson v. California*, 125 S.Ct. 2410, 2416 (2005) (*quoting Batson*, 476 U.S. at 93-94).  Second, if the *prima facie* showing has been made, the burden shifts to the proponent of the strike to come forward with a race-neutral reason for the strike. *Id*.  Third, if a race-neutral explanation is tendered, the trial court must determine whether the opponent of the strike has shown purposeful discrimination.  *Id*.

**Potential Juror Mr. Williams**

The prosecutor used the State's first peremptory challenge to excuse potential juror Mr. Williams, an African-American.  Defense counsel noted for the record: "Mr. Williams is a black man for purposes of future *Batson* challenges."  Tr. II at 129.  Defense counsel did not, however, specifically object to Mr. Williams' removal.  The trial court then noted *sua*

*sponte* for the record that Mr. Williams "said he didn't want to be here.[1]  He has turned his chair around during the voir dire process.  He has just shown absolutely no interest in being here.  His answers have been fairly short in his tone and inflection of his voice have not been forthcoming, okay."  Tr. II at 130.

In addressing this claim, the OCCA recited the trial court's findings about Mr. Williams and determined there was "no plain error in the State's exercise of a peremptory challenge against Mr. Williams."  *See* Response, Exhibit C, OCCA Opinion at 4-5.

Petitioner contends habeas relief is warranted because the State failed to fulfill its duty under *Batson* to come forward with a race neutral reason.  Petitioner further contends the trial judge improperly attempted to "play the role of prosecutor" by supplying his own race neutral reason.  *See* Reply [Doc. #14] at 7.  According to Petitioner, "[n]othing in *Batson's* progeny allows a trial judge to assume the role of the prosecutor at step two of the *Batson* analysis."  *Id.* at 8.  Petitioner contends the trial judge's actions demonstrate bias and establish that Petitioner was deprived of a "meaningful factfinding process under *Batson.*"  *Id.*  Petitioner further contends that because the prosecutor and the trial court did not fulfill their respective duties at steps two and three of the *Batson* analysis, the OCCA's determination that no *Batson* violation occurred is contrary to and an unreasonable application of clearly established federal law.

---

[1]The record reflects that Mr. Williams stated: "I'm not too happy to be here."  Tr. I at 91.

5

**Potential Juror Mr. West**

The prosecutor exercised the State's fourth peremptory challenge to excuse Mr. West, also an African-American.   As with Mr. Williams, defense counsel did not object on *Batson* grounds but simply stated: "And, for the record, Mr. West was a black male, the State's fourth kick."   Tr. Vol. II at 131.   The trial court did not request the State to provide a race-neutral reason in response.   The prosecutor simply responded to defense counsel's statement as follows:

> Mr. West when asked the questions seemed to be somewhat inarticulate and he appeared to have problems responding verbally which worries us with regard to his skills as a juror discussing the case with the other potential jurors.

Tr. Vol. II at 131.

In addressing this claim, the OCCA stated:

> We agree that from the written record, it does not appear that Mr. West's responses were 'inarticulate' as claimed by the prosecutor. (Tr. 76, 97-98, 125, 163, 176; Tr. II 66-68, 84).  Defense counsel offered no additional objection, and the reason offered by the prosecutor was clear and reasonably specific and seemingly legitimate.   We cannot say this was a pretextual reason, not supported by the record, as the trial court had the opportunity to observe voir dire and the potential jurors.   A written record does not show whether a person is slow to respond, difficult to understand, or is hesitant to or has difficulty communicating with other people.   Affording the trial court the deference deserved, we cannot say this reason should have been rejected by the trial judge.  [Citations omitted].

*See* OCCA Opinion at 5-6.

Petitioner contends that the trial court again erred by failing to make specific findings on the record as to whether the State's proffered reason was pretextual.   Petitioner further contends that as a result, the OCCA had no trial court findings to defer to, making the

6

OCCA's determination contrary to and an unreasonable application of clearly established federal law as well as an unreasonable determination of the facts in light of the evidence presented. *See* Reply at 10-11.

### **Potential Juror Mr. Sherfield**

Mr. Sherfield, a black male, was stricken by use of the State's sixth peremptory challenge. Tr. Vol. II at 132. When the State exercised its challenge, defense counsel responded: "He is a black male." *Id.* The prosecution offered the following race-neutral reason, again without any request from the trial court to do so:

> Mr. Sherfield, when asked about his juvenile court prior case, mentioned that it was a misunderstanding which leads us to believe he didn't take his prior juvenile appearance as seriously as maybe he should.

Tr. Vol. II at 132. The trial court allowed the peremptory strike to stand and continued with jury selection. Tr. Vol. II at 132-133.

The OCCA found as follows with respect to the State's exercise of a peremptory challenge to excuse Mr. Sherfield:

> Again, Appellant claims the prosecutor's proffered reason for excusing Mr. Sherfield was pretextual and was not supported by the record. By allowing the selection process to proceed after noting defense counsel's concerns, we may infer the trial court determined the reason for the peremptory was not racially motivated. Again, on the record before us, we cannot say this reason was not a legitimate concern, that it was pretextual or racially motivated. Excluding a potential juror due to prior criminal history is a valid race neutral reason for striking a juror. [Citation omitted]. We will not disturb the trial court's decision to allow jury selection to proceed where Appellant has not shown the decision was clearly erroneous. [Citation omitted].

*See* OCCA Opinion at 6.

7

Petitioner contends the OCCA failed to address the following facts in reaching its decision: (1) other jurors (Mr. Williams and Ms. Richardson) with juvenile records were not removed from the jury on that basis (Tr. Vol. I at 76-78); (2) the prosecutor's reasons were pretextual because he had not sought to remove Mr. Sherfield for cause on the basis of his prior juvenile case; and (3) Mr. Sherfield had indicated his prior juvenile court experience was beneficial to him (Tr. Vol. II at 60-61). *See* Reply at 12.

### Potential Juror Ms. Johnson

The next potential juror Petitioner claims was removed in violation of his federal constitutional rights is Ms. Johnson, an African-American woman. When the prosecutor exercised the State's eighth peremptory challenge to excuse Ms. Johnson on the ground that she had been a victim of domestic violence defense counsel stated: "She is a black female. We would raise a *Batson* issue, Your Honor." Tr. Vol. II at 133. Without waiting for instruction from the trial court, the prosecutor offered the following race-neutral reason for excusing Ms. Johnson:

> She made some statements regarding the fact that victims of domestic violence are at times . . . could be, at times, considered to be responsible for remaining in a situation. Obviously, I think our victim can be characterized as doing that in this case so that is why we are striking Ms. Johnson.

Tr. Vol. II at 133-134. Defense counsel made no further objection following the prosecutor's statements and the trial court allowed jury selection to continue. Tr. Vol. II at 134.

The OCCA determined the prosecutor's concern to be valid. In addition, the OCCA noted that the record showed not only was Ms. Johnson a victim of domestic violence, "but

8

that in fact her husband was prosecuted by the Oklahoma County District Attorney's office for the abuse." *See* OCCA Opinion at 7 *citing* Tr. Vol. II at 115.  Therefore, the OCCA concluded that "the reason for the removal of Ms. Johnson was not racially motivated but rather was based upon her personal background and the particular facts of this case." *Id*.

Petitioner contends that the OCCA failed to consider specific arguments raised on direct appeal.  He contends other non-minority jurors also held beliefs and/or experiences similar to Ms. Johnson about victims of domestic abuse yet these individuals served on the jury.  He also contends Ms. Johnson's responses during voir dire indicated she would not necessarily blame someone who is a victim of domestic violence for their situation. Therefore, Petitioner contends the record did not support the OCCA's finding that the reason offered by the State was race-neutral.  Petitioner also contends, as with his previous *Batson* challenges, that the trial court failed to make a proper record of findings as to the alleged *Batson* violation.  *See* Reply at 16-19.

### **Potential Juror Ms. Torres**

Ms. Torres, a Hispanic female, was excused on the prosecutor's use of the State's ninth peremptory challenge.  Defense counsel stated "We would again raise *Batson*, Your Honor." Tr. Vol. II at 134.  Defense counsel then offered an objection based on the fact that five out of eight strikes exercised by the prosecution were made to exclude racial minorities. Tr. Vol. II at 134.  The trial court then requested the prosecution to provide a race-neutral reason for striking Ms. Torres.  *Id*.  The prosecutor's proffered race neutral reason for  the removal of Ms. Torres was due to the fact that her brother-in-law was "on death row" and

9

was prosecuted by the Oklahoma County District Attorney's office. Tr. Vol. II at 135. The

OCCA determined that the "record supports the race-neutral reason given by the prosecutor

and no error occurred." *See* OCCA Opinion at 8.

Petitioner contends once again that the trial court's failure to make specific findings

on the record with regard to Ms. Torres requires the grant of habeas corpus relief.[2]  In

addition, Petitioner contends in the aggregate, the fact that five of the eight jurors stricken

by the prosecution were minorities establishes a *Batson*  violation.[3]

The OCCA rejected Petitioner's *Batson* challenge on direct appeal.  After discussing

each challenged juror separately, the OCCA then concluded:

> The prosecutor exercised the majority of the State's peremptory
> challenges to excuse minorities. [footnote omitted].  In each instance, however,
> the record shows a sufficient, race-neutral reason to support the State's
> challenges.  The defense did not request the trial court make specific findings
> with regard to each proffered reason.  It is obvious that the trial court accepted
> the reasons offered by the prosecutor because the trial court repeatedly allowed
> the selection process to continue.  Despite the acceptable race-neutral reasons
> offered for excusing these jurors, appellate counsel argues the disproportionate
> number of strikes used against minority jurors creates a *prima facie* case of a
> *Batson* violation.

---

[2]In addition Petitioner contends the OCCA's finding that "a challenge for cause against Ms.
Torres likely would have been sustained" as "unreasonable in light of all the facts."  *See* Reply at
21.  It appears Petitioner intended to challenge the OCCA's actual finding that: "It is obvious from
the record that a challenge for cause likely would *not* have been sustained."  *See* OCCA Opinion at
8 (emphasis added).  Assuming this is Petitioner's challenge, it is without merit because the OCCA
provided a reasonable basis for that conclusion by reference to the record of the trial court's
handling of challenges for cause.

[3]The record discloses that at least one juror, Mr. Johnson, was a black male.  Tr. Vol. II at
135.

> While some jurisdictions hold, as a matter of law, that a disproportionate number of strikes against a particular group creates a *prima facie* case of discrimination [citation omitted], here, the prosecutor justified each individual strike with a sufficiently race-neutral reason which found support in the record. While as a whole, the challenges may appear discriminatory, individually the strikes were completely legitimate. Without some further showing of inherent discriminatory intent on the part of the prosecutor, these strikes cumulatively do not become racially motivated. [footnote and citations omitted]. Giving deference to the trial court's findings that the peremptory challenges were not racially motivated, we find no error and Proposition One is denied.

*See* OCCA Opinon at 8-9.

The OCCA correctly identified the applicable federal law -- the Equal Protection right recognized in *Batson*. It also correctly observed that *Batson* requires courts to follow a three-step process to ensure that peremptory strikes are not used to unconstitutionally exclude potential jurors on the basis of their race. *See* OCCA Opinion at 3-4. Therefore, the OCCA's determination must be accorded AEDPA deference. Under Tenth Circuit precedent, "'[t]he disposition of a *Batson* claim is a question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2).'" *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (*quoting Sallahdin v. Gibson*, 275 F.3d 1211, 1225 (10th Cir. 2002)).

Petitioner's habeas claim based on *Batson* challenges are foreclosed by the Tenth Circuit Court of Appeals decision in *Saiz*. That case involved a trial record substantially similar to the record at issue in this case.

In *Saiz*, the petitioner alleged the prosecution had used eight of its nine peremptory challenges to remove jurors on the basis of race (Hispanic) or gender (female) in violation of the Fourteenth Amendment's Equal Protection Clause. As in this case, the record failed

to establish at the trial court level that as to each exercise of the State's peremptory challenges, the parties had made express the requisite showing at steps one and two of the *Batson* analysis.  In addition, the record failed to establish the trial court had made express findings at step three of the *Batson* analysis.

The Tenth Circuit determined, nonetheless, that the petitioner had not established the state court's determination that no *Batson* violation occurred was contrary to or an unreasonable application of clearly established federal law.

### *Prima Facie* **Case – Step One**

In *Saiz*, the Tenth Circuit determined that explicit rulings at each step of the *Batson* analysis are not required.  For example, the Tenth Circuit found that as to one juror, Mr. Aubril, the trial court's failure to go on to step two of the *Batson* analysis, by asking the prosecution to explain its peremptory strike, reflected the trial court's implicit conclusion that the petitioner had failed to establish a *prima facie* case of discrimination.  *Id.* at 1178 ("[O]ur independent review of the record reveals that the trial court had simply failed to make an *explicit* ruling on the record with respect to . . . Aubril.") (emphasis in original).  The Tenth Circuit held that for purposes of habeas review, the trial court's finding had not been rebutted by clear and convincing evidence.  *Id.*   The Court concluded that because the record did not reveal the petitioner had made a *prima facie* case of discrimination, the state court's ultimate decision that the petitioner failed to show purposeful discrimination was a reasonable determination of the facts and a reasonable application of *Batson*.  *Id.*

12

Here, defense counsel did not specifically make a *Batson* challenge as to Mr. Williams but noted that for *future Batson* challenges, Mr. Williams was African-American. Defense counsel, therefore, failed to establish a *prima facie* case of purposeful discrimination and the trial court did not err in not proceeding to steps two and three of the *Batson* analysis.

Nor does the fact that the trial court *sua sponte* offered a race neutral reason change the result. To the extent the trial court's actions amount to a concession that Petitioner established a *prima facie* case, the race neutral reason offered by the trial court is supported by the record. *See Saiz*, 392 F.3d at 1166 (assuming *prima facie* case established where the court proceeds to analyze steps two and three of the *Batson* inquiry).

The record reflects the trial court did not request the State to provide race-neutral reasons as to the peremptory strikes of Mr. West, Mr. Sherfield, or Ms. Johnson. Tr. Vol. II at 132-134. Rather, defense counsel noted the minority status of each juror, and the prosecution, without a request to do so from the trial court, offered a race-neutral reason for exercising the peremptory strike. It appears, therefore, that Petitioner failed to establish a *prima facie* case of discrimination. It was not enough for defense counsel to note the juror's minority status. *See Saiz*, 392 F.3d at 1177 n. 6 ("To establish a *prima facie* case of intentional discrimination, a defendant must show that the prosecution has exercised its peremptory strikes to remove minority jurors or jurors of a particular gender as well as facts and relevant circumstances which raise an inference that the prosecution used its peremptory strikes to exclude potential jurors on the basis of race or gender."). *See also Johnson v. California*, 125 S.Ct. at 2417 (to establish a *prima facie* case of a *Batson* violation a

13

defendant must show that he is a member of a cognizable racial group, the prosecution's exercise of a peremptory challenge and "any other relevant circumstances [that] raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."). Absent a *prima facie* case, the trial court was not obligated to proceed to step two.

### Prosecutor's Explanations – Step Two

The prosecution offered a race neutral reason for striking all jurors with the exception of Mr. Williams. As discussed above, the trial court *sua sponte* supplied a race neutral reason for striking Mr. Williams.

As set forth above, the OCCA determined the record demonstrated a race-neutral reason had been offered as to each of the peremptory strikes challenged by Petitioner. The only factual findings challenged by Petitioner relate to Mr. Sherfield and Ms. Johnson. Petitioner contends the OCCA failed to address the fact that non-minority jurors shared experiences similar to these individuals and yet were not the subject of the State's exercise of peremptory challenges. As to Mr. Sherfield, he was not the only individual to have juvenile court experience and as to Ms. Johnson, she was not the only individual impacted by domestic violence.

At step two of the *Batson* analysis, the prosecution is not required to provide an explanation that is "persuasive, or even plausible." *Saiz*, 392 F.3d at 1179 (quotations and citation omitted). The race-neutral explanation must simply be facially valid. *Id*. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be

14

deemed race neutral." *Id.* (quotations and citations omitted). A race neutral explanation means an explanation showing that the peremptory strike was exercised based on something other than the race of the juror. *Id.* The fact that other jurors may have had experiences similar to Mr. Sherfield and Ms. Johnson, without more, does not constitute clear and convincing evidence to rebut the OCCA's ultimate conclusion that the State's reasons for striking these jurors were not pretextual. Accordingly, Petitioner has failed to demonstrate that this was an unreasonable determination of the facts in this case.

### **Purposeful Discrimination – Step Three**

Petitioner maintains that the trial court's failure to make express findings as to step three of the *Batson* analysis requires the grant of habeas relief. As set forth, it does not appear Petitioner established a *prima facie* case as to any prospective jurors other than possibly Ms. Torres. Nonetheless, either the trial court (as to Mr. Williams) or the prosecutor (as to the remaining prospective jurors) offered a race neutral reason in each instance. Therefore, the Court alternatively views whether the trial court erred at step three of the *Batson* analysis by failing to make express findings as to whether purposeful discrimination had been established.

In each instance, the trial court did not disallow the State's peremptory strike and instead allowed voir dire to continue. Under these circumstances, "the trial court implicitly ruled that the explanations offered by the prosecution were credible, believable, and race- and/or gender-neutral." *Saiz*, 392 F.3d at 1180. As in *Saiz*, here "[t]he trial court's implicit finding that the prosecution had offered credible race- and/or gender-neutral explanations for

15

its use of peremptory strikes in [Petitioner's] trial has not been rebutted by clear and convincing evidence. Thus, the [OCCA's] conclusion that the trial court properly determined [Petitioner] failed to show purposeful discrimination is not an unreasonable determination of the facts." *Id.*

In sum, the OCCA, in a fully reasoned decision, thoroughly examined each peremptory challenge and applied controlling Supreme Court precedent in concluding that no violation of Petitioner's constitutional rights occurred – either individually or in the aggregate.  Having reviewed the record, the OCCA's determination of the facts is not unreasonable, nor is the OCCA's determination contrary to or an unreasonable application of clearly established federal law.  Therefore, Ground One of the Petition should be denied.

## Ground Two – Failure to Instruct the Jury

Petitioner contends he was denied due process when the trial court refused to give two of his requested jury instructions related to sentencing.  One instruction was proffered  to clarify the meaning of the sentences of life and life without parole.[4]  The other proffered instruction explained the requirement under Oklahoma law that a convicted person must

---

[4]The requested instruction provided:

A life sentence means imprisonment for the balance of the defendant's natural life with the possibility of being considered for parole by statute after serving 38.25 years imprisonment.  A life without parole sentence means imprisonment for the balance of the defendant's natural life without the possibility of ever being considered for parole.

*See* OCCA Opinion at 9-10.

serve eighty-five percent of the sentence imposed before becoming eligible for parole consideration.[5]

Addressing the trial court's refusal to give these instructions, the OCCA relied on its precedent to hold that the meaning of life imprisonment without parole is self-explanatory and an instruction on its meaning is not required. *See* OCCA Opinion at 10-11.  In addition, the OCCA held the trial court was not required to instruct the jury on parole eligibility finding that "[t]he parole related policies and practices of the executive branch and legislative controls on parole eligibility are not proper matters for the jury's consideration." *See id*. at 12 (citations omitted).

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal quotation marks omitted).  Petitioner has failed to establish his trial was rendered fundamentally unfair as a result of the trial court's refusal to give his requested instructions.

---

[5]This requested instruction provided:

Under the law in Oklahoma, persons convicted of Manslaughter in the First Degree shall be required to serve not less than eighty-five percent (85%) of any sentence of imprisonment imposed by the judicial system prior to becoming eligible for consideration for parole.  Persons convicted of Manslaughter in the First Degree shall not be eligible for earned credits or any other type of credits which have the effect of reducing the length of the sentence to less than eight-five percent (85%) of the sentence imposed.

*See* OCCA Opinion at 10.

Tenth Circuit precedent holds that in non-capital cases, the meaning of life without parole need not be further defined for a jury and therefore, failure to give such an instruction does not constitute a violation of federal constitutional rights. *See, e.g., Sallahdin v. Gibson*, 275 F.3d 1211, 1229 (10th Cir. 2002); *Neill v. Gibson* 278 F.3d 1044, 1063 (10th Cir. 2001); *Mayes v. Gibson*, 210 F.3d 1284, 1294 (10th Cir. 2000).

The United States Supreme Court has required a parole ineligibility instruction only in capital cases where at the time of sentencing, the defendant is ineligible for parole. In *Simmons v. South Carolina*, 512 U.S. 154, 156 (1994), the Court required the trial court to disclose a defendant's ineligibility for parole "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole . . . ." However, the Supreme Court subsequently declined to extend *Simmons*, limiting its applicability "to instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison." *Ramdass v. Angelone*, 530 U.S. 156, 169 (2000) (plurality opinion). No United States Supreme Court precedent requires an instruction regarding parole ineligibility in a non-capital case.[6] The OCCA's adjudication of this issue

---

[6]For this reason, Petitioner's reliance on *Mollett v. Mullin*, 348 F.3d 902 (10th Cir. 2003), is unfounded. In *Mollett* the Tenth Circuit found constitutional error where the trial court refused to give a *Simmons* instruction explaining to the jury the distinguishing feature under Oklahoma law between life imprisonment and life imprisonment without parole and the jury was left to speculate about the petitioner's parole eligibility when considering his future dangerousness. However *Mollett* is a capital case and therefore is not controlling. Moreover, in a most recent decision, the Tenth Circuit has held, in a capital case, that the OCCA's conclusion that the trial court's refusal to give a jury instruction explaining to the jury that the defendant would not be parole eligible is not contrary to or an unreasonable application of *Simmons*. *See Hamilton v. Mullin*, ____ F.3d ____, No. 04-5067, 2006 WL 165011 (10th Cir. Jan. 24, 2006) (for publication).

18

did not result in a decision that is contrary to or an unreasonable application of Supreme Court precedent.  Ground Two of the Petition, therefore, should be denied.

### **Ground Three – Cumulative Error as Basis for Due Process Violation**

Petitioner claims that numerous instances of trial error and prosecutorial misconduct cumulatively denied him a fundamentally fair trial in violation of his federal constitutional rights.  Each of the alleged errors is addressed.

First, Petitioner contends the trial court admitted victim protection order paperwork, State's Exhibits 70-72, and other crimes or bad act evidence of Petitioner having pointed a shotgun at his wife and having wielded an ax at her.[7]  Addressing this claim, the OCCA found the evidence admissible as tending to show motive, absence of mistake, and intent. According to the OCCA "[t]here was clearly a logical connection between this other crimes evidence and the offense charged."  *See* OCCA Summary Opinion at 14.  In addition, the OCCA found that "the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice . . . ."  *See id.*

---

[7]The OCCA summarized these incidents as follows:

Around March 4, 2001, Appellant, who was intoxicated, was angry with Sylvia because she was going to call the police.  He pointed a loaded shotgun at her and pulled the trigger.  The shotgun did not fire.  Sylvia called the police and Appellant fled the home.  On another occasion, Appellant, again intoxicated, was angry at Sylvia and retrieved the ax and proceeded towards the bedroom to find Sylvia.  His step-son, Leonel, saw him, took the ax from him and threw the ax on top of the roof."

*See* OCCA Opinion at 13, n.7.

On habeas review, a federal court will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence was so greatly outweighed by the prejudice flowing from its admission that the admission denied the petitioner due process of law. *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (*citing Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir. 1998)). Here, Petitioner has failed to establish a denial of due process resulting from the admission of the other crimes evidence. As the OCCA reasonably and properly determined, the other crimes evidence was admissible to show motive, absence of mistake and intent and its probative value outweighed the risk of unfair prejudice.

Second, Petitioner contends the trial court improperly admitted State's Exhibit 74, the shotgun purportedly pointed at the decedent by Petitioner on an occasion approximately one month prior to the murder. According to Petitioner, the State failed to give proper notice of its intent to introduce the gun into evidence. In addition, Petitioner contends the State did not make the shotgun available for examination prior to trial.

Whether Petitioner was given proper notice of the State's intent to use this evidence is an issue of state law not cognizable on federal habeas review.[8] To the extent Petitioner claims introduction of the shotgun into evidence violated his due process rights, he has failed

---

[8]The OCCA determined the State had failed to comply with state law notice requirements by failing to specifically disclose its intent to offer the shotgun as evidence in the trial. *See* Okla. Stat. tit. 22, § 2002(A)(1)(f). However, the OCCA determined Petitioner could not have been surprised by the introduction of this evidence because the defense had notice the State intended to introduce evidence of the prior shotgun evidence and the defense had the police reports. *See* OCCA Opinion at 16.

to demonstrate such evidence rendered his trial fundamentally unfair.  As the OCCA discussed, other evidence of the prior shotgun evidence was admitted and, therefore, admission of the shotgun itself was not unduly prejudicial.

Third, Petitioner contends the jury was improperly exposed to hearsay statements of the deceased elicited by defense counsel.[9]  Sergeant Terry Dickerson[10] testified that the decedent "said that her husband was loading a shotgun and she had ran into the bedroom . . . and she disconnected with 911.  She said he pointed the gun at her once and he pulled the trigger and it clicked, she got up to run outside and as she was going outside she heard another click."  Tr. Vol. III at 24-25.

Addressing this claim, the OCCA held: "We cannot say the elicitation of Mrs. Fabela's statements to the officer were unduly prejudicial, as the State had already elicited testimony concerning the assault during direct examination of this witness and through the

---

[9]Petitioner claims his trial counsel elicited "highly inflammatory hearsay" testimony from Sargent Dickerson but concedes this single incident does not rise to the level of ineffective assistance of counsel.  Rather, Petitioner requests this prejudicial testimony be considered as part of the cumulative error claim.

[10]Petitioner's brief on direct appeal identified the testifying officer as Officer Mary Vinson, but cites the testimony of Sargent Dickerson.  *See* Response, Exhibit A, Brief of Appellant at 33; *see also* Petition at 7.  It appears, therefore, that the reference to Officer Vinson, who testified immediately before Sargent Dickerson, is a clerical error.  The OCCA referenced the testimony of Sargent Dickerson in addressing this claim.  *See* OCCA Opinion at 19-20.

examination of other witnesses." *See* OCCA Opinion at 19-20.[11]   Petitioner fails to establish

how this testimony was so prejudicial as to render his trial fundamentally unfair.[12]

Fourth, Petitioner contends he was denied a fundamentally fair trial due to multiple

instances of prosecutorial misconduct during closing argument.   Petitioner challenges

statements made by the prosecutor which he contends mischaracterized defense counsel's

closing argument, mischaracterized the facts in evidence and constituted derogatory

characterizations of Petitioner.   Tr. Vol. V at 29, 39, 63, 68, 77.   During the prosecutor's

closing argument, the trial court reminded jurors that they were the triers of fact and that the

prosecutor's statements constituted only argument of counsel.   Tr. Vol. V at 77, 84.   The

OCCA found no prosecutorial misconduct and further found that "considering the totality of

the evidence presented, any minor misstatements of facts were not verdict determinative."

*See* OCCA Opinion at 17.

---

[11]Petitioner's children gave eyewitness testimony about the incident involving the gun.   Tr. Vol. II at 203-204; Vol. IV at 53-54.

[12]In his Reply, Petitioner attempts to raise, for the first time, a Sixth Amendment claim alleging that his confrontation rights were violated as the result of the admission of this hearsay testimony.   Petitioner relies upon *Crawford v. Washington*, 541 U.S. 36 (2004) in support of this claim.   *See* Reply at 33-34.   Petitioner's direct appeal brief challenges the admission of this testimony solely as a violation of his due process rights.   His Petition similarly alleges only a violation of his due process rights.   *See* Petition at 7, Ground Three.   Petitioner's attempt to add a claim based on alleged violations of his confrontation rights is rejected.   He has not sought leave to amend his Petition to include such a claim.   Moreover, because he never presented such a claim to the state courts, if he were to obtain leave to amend the Petition, the Court would be faced with a mixed petition containing both exhausted and unexhausted claims and the Court would be required to dismiss the petition on that ground.   *See Rose v. Lundy*, 455 U.S. 509 (1982).

Petitioner further contends the prosecutor improperly appealed to sympathy for the deceased.  Tr. Vol. V at 24, 66, 80-81.  As to these comments, the OCCA found: "[t]he arguments Appellant claims improperly invoked sympathy for the victim accurately characterized the period leading up to the murder."  *See* OCCA Opinion at 17.

Finally, Petitioner contends that during voir dire the prosecutor improperly focused on the punishment of life without the possibility of parole.  The OCCA determined that "[i]nquiry into whether a potential juror can follow the law and consider all possible punishments without being irrevocably committed to one is clearly within the proper scope of voir dire."  *See* OCCA Opinion at 19.

Prosecutorial misconduct gives rise to federal habeas corpus relief only when such misconduct either violated a specific constitutional right or "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).   As the Supreme Court has indicated, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Having reviewed the instances of alleged prosecutorial misconduct, the Court finds that Petitioner has not established that his trial was rendered fundamentally unfair.  *Compare Spears v. Mullin*, 343 F.3d 1215, 1245-1247 (10th Cir. 2003) (petitioner's trial was not rendered fundamentally unfair by prosecutor's attempts to evoke sympathy for the victim, present victim impact evidence, "dehumanize" petitioner, comment as to the brutality of the crime, and telling jurors they had a moral duty to convict), *cert. denied sub nom. Powell v. Mullin*, 541 U.S. 909 (2004). This claim is without merit and

the OCCA's  determination of this claim is not contrary to or an unreasonable application of clearly established federal law.

Nor has Petitioner established that the cumulative effect of the errors complained of in Ground Three of the Petition rendered his trial fundamentally unfair.  *See, e.g., Spears,* 343 F. 3d at 1248 (no cumulative error even when considering prosecutorial remarks in the aggregate); *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998) (rejecting habeas petitioner's challenge to cumulative effect of alleged improper prosecutorial remarks where petitioner could not demonstrate his substantial rights were affected).  As the OCCA determined "[h]aving reviewed each of these alleged errors individually and cumulatively, we find no relief is required . . . ."  *See* OCCA Opinion at 20.  The OCCA's determination as to cumulative error is subject to § 2254(d) deference particularly where, as here, the evidence of Petitioner's guilt was strong.  Therefore, habeas relief should be denied as to Ground Three of the Petition.

### Ground Four – Excessive Sentence

Petitioner contends the sentence of life without parole is excessive and disproportionate in violation of the Eighth Amendment prohibition against cruel and unusual punishment.  As argued in his direct appeal brief, Petitioner contends his sentence is excessive because "there has been no determination that Mr. Fabela is not amenable to rehabilitation or that Mr. Fabela will present an on-going danger to society upon release." *See* Response, Exhibit A, Brief of Appellant at 38.  In addition, Petitioner relies on the fact that he had no prior felony convictions.

24

The Eighth Amendment requires that a sentence not be disproportionate to the severity of the crime or involve unnecessary infliction of pain. *See Solem v. Helm*, 463 U.S. 277, 284 (1983). On habeas review, federal courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law. *Dennis v. Poppel*  222 F.3d 1245, 1258 (10th Cir. 2000) (citations omitted).

Under Oklahoma law, murder in the first degree is punishable by life imprisonment, life imprisonment without the possibility of parole, or death. *See* Okla. Stat. tit. 21, § 701.9(A). In affirming the sentence on direct appeal the OCCA found:

> The record demonstrates Mr. Fabela brutally and viciously murdered his wife in the presence of his own children. The facts of this case, including the history of domestic violence preceding the murder, show the punishment imposed was not disproportionate to the crime and show Appellant was deserving of the punishment imposed by the jury. Under the facts of this case, the State could have well filed a bill of particulars seeking the death sentence. Life without the possibility of parole may well have been a lesser sentence.

*See* OCCA Opinion at 20-21. "Generally, [habeas] review of a sentence ends once [the court determines] the sentence is within the limitation set by statute." *Dennis*, 222 F.3d at 1258 (citation omitted). Petitioner was sentenced in accordance with the permissible range provided for by Oklahoma law. As the OCCA found, the nature of the crime Petitioner committed did not render the sentence he received disproportionate. Indeed, the United States Supreme Court has found a sentence of life without parole for a drug conviction to withstand Eighth Amendment scrutiny. *See Harmelin v. Michigan*, 501 U.S. 957 (1991)

(majority held that imposition of life in prison without parole for possession of 650 grams of cocaine did not violate Eighth Amendment). Petitioner's Eighth Amendment challenge to his sentence lacks merit.  The OCCA's adjudication of this claim did not result in a decision that was contrary to or an unreasonable application of federal law.  Therefore, Ground Four of the Petition should be denied.

## Ground Five – Ineffective Assistance of Trial Counsel

Petitioner contends trial counsel was ineffective for (1) failing to clarify sources of blood at the crime scene; (2) failing to negate the State's contention that Petitioner killed his wife by repeatedly striking her with an ax; (3) failing to negate the State's contention that Petitioner had no remorse for his wife's death; (4) failing to call Petitioner and Detective McNutt to testify for the defense; (5) adopting and acting upon a belief that Petitioner was guilty of first degree murder; and (6) failing to challenge the voluntariness of his statements to police.

Petitioner did not raise his ineffective assistance of trial counsel claims on direct appeal.  Instead, he raised these claims for the first time in state post-conviction proceedings. *See* Response, Exhibit G, Application for Post-Conviction Relief. The state district court determined the ineffective assistance of trial counsel claims could have been raised on direct appeal and, therefore, denied those claims.  *See* Response, Exhibit D, Order Denying Application for Post-Conviction Relief.  The OCCA affirmed the district court's determination that "[a]ny allegations as to trial counsel's ineffectiveness have been waived as this is an issue which could have been raised on direct appeal." *See* Response, Exhibit E,

OCCA Order Affirming Denial of Post-Conviction Relief at 2. Therefore, Respondent contends this ground for relief is procedurally barred.

On federal habeas review, the merits of a claim will not be considered if the claim has been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). In Ground Seven, Petitioner asserts ineffective assistance of appellate counsel as cause for failing to raise his ineffective assistance of trial counsel claims on direct appeal. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002) ("A showing that a defendant received ineffective assistance of counsel will establish cause excusing a procedural default.").

*Strickland v. Washington*, 466 U.S. 668 (1984) provides for a two-part test for determining whether a petitioner's Sixth Amendment right to effective assistance of counsel has been violated. First, the petitioner must establish that counsel's performance fell below an objective standard of reasonableness. *Id*. at 687. Second, the petitioner must establish that but for counsel's errors, the outcome of the proceedings would have been different. *Id*.

Where ineffective assistance of appellate counsel is raised as cause for excusing a procedural default, application of *Strickland* requires the Court to look to the merits of the omitted issue. *Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002); *United States v. Cook*, 45 F.3d 388, 392 (10th Cir.1995) (to determine if appellate counsel provided ineffective

assistance by failing to raise an issue on appeal "we examine the merits of the omitted issue").  If the omitted issue is meritless, counsel's failure to appeal it is not a Sixth Amendment deprivation. *Cook* 45 F.3d at 392-393.  Accordingly, the merits of Petitioner's ineffective assistance of trial counsel claims are addressed.

### Sources of Blood at the Crime Scene

Petitioner contends that trial counsel failed to challenge "the negative implication by the state that all the blood at the crime scene originated from the victim's wounds and that her death was intentional and brutal." As Respondent points out, in this case, the origin of the blood at the crime scene was not at issue.  The jury heard testimony that both the victim and Petitioner received injuries causing them to bleed.  The jury, therefore, was able to logically infer that blood from both individuals was present at the crime scene.

Petitioner contends nonetheless that most of the blood was his and that this negates the inference that the victim's cause of death was the result of having been struck with an ax. Again, evidence was presented to the jury that Petitioner had slit his own throat with a a knife.  The jury had sufficient facts to determine for themselves the inferences to be drawn from the blood present at the scene of the crime.

### Evidence Related to the Victim's Cause of Death

Petitioner further contends "[t]rial counsel failed to present available evidence showing that  Ms. Fabela's fatal wounds resulted from her falling into a broken window and onto a table and not from Mr. Fabela striking her with an ax."  *See* Petition, Ground Five, unnumbered page 9.  Testimony about the crime scene revealed that there was a broken

window in the room where the Petitioner and the victim were found.  Tr. Vol. III at 220.

However, Sargent Taylor Dinh, the technical investigator of the crime scene, testified that

the broken glass in the window appeared to be "old damage" because he did not observe any

broken glass on top of the air-conditioning unit, the floor, or on the victim's body.  Tr. Vol.

III at 220.

The medical examiner testified that the victim's wounds were caused by a blunt

object, "not like a knife or bullet."  Tr. Vol. IV at 139.  He further testified that the victim's

wounds were consistent with wounds that could be inflicted by the ax.  Tr. Vol. IV at 140.

This testimony negates any inference that the victim's wounds were caused by falling into

sharp glass.

In addition, the eyewitnesses to the crime, Petitioner's children, did not testify that the

victim fell into the window, but that Petitioner struck her with an ax.  Greg Fabela,

Petitioner's son, testified that on the night of the crime, he awoke to his mother yelling his

name.  He saw his mother and father "fighting with an ax."  Tr. Vol. II at 222-223.  He saw

his father holding the ax on the outside and his mother holding the ax on the inside.  Tr. Vol.

II at 223-224.  He jumped on his dad and his mother fell to the floor.  *Id*. at 224.  Petitioner

then got a knife from the kitchen and came towards Greg after he had said to Petitioner that

if anything happened to his mother, he would pay for it.  Tr. Vol. II at 225.  Greg then got

his little brothers and sisters, fled to the neighbor's house and called 911.  Tr. Vol. II at 226.

The 911 call was admitted into evidence.  During the call, Greg Fabela stated that his

father had hit his mother with an ax and that his mother was bloody.  Tr. Vol. II at 231.  At

trial, Greg testified that he didn't really remember seeing her.  *Id*.  However, the officer who interviewed Greg on the night of the crime testified that Greg had told him he witnessed his father strike his mother with the ax.  Tr. Vol. III at 69-70.

In addition, Yesenia Fabela, Petitioner's daughter, testified that she saw her dad walk into the boys' room with an ax and saw him raise his hand to hit her mother.  Tr. Vol. IV at 69, 71-72, 87-88.  Yesenia observed her mother fall to the floor and saw blood on the right side of her mother's head.  Tr. Vol. IV at 73.  She then saw her father put a knife to his throat and fled with her brothers and sisters to a neighbor's house.  Tr. Vol. IV at 74.

And, perhaps most significantly, in his statement to police, Petitioner never indicated that the victim fell into the window, but instead admitted that he had struck her with an ax. Tr. Vol. IV at 104-109. Defense counsel, therefore, was not ineffective for failing to put forth evidence related to the window and the broken glass.

### Petitioner's Right to Testify

Petitioner alleges that trial counsel should have allowed him to testify so that he could negate the State's contention that he had no remorse for his wife's death.  In addition, he contends that trial counsel should have allowed him to testify about the victim falling into the broken window.  The record, however, clearly demonstrates that Petitioner knowingly and voluntarily made the decision not to testify at trial.  Tr. Vol. V at 4-6.  Specifically, Petitioner advised the trial court that defense counsel had not done anything to stop him from testifying.  *Id*. at 6.  Petitioner fails to establish, therefore, that his counsel rendered unconstitutionally deficient performance. *Compare United States v. Rhodes*, No. 05-6017,

2005 WL 3293941 at *4 (10th Cir. Dec. 6, 2005) (unpublished op.)[13] (habeas petitioner failed to establish ineffective assistance of trial counsel based on counsel's alleged failure to allow him to testify at trial and failure to present evidence where record established petitioner knowingly waived his right to testify and witness testimony did not support his defense). Moreover, given the overwhelming evidence of Petitioner's guilt, Petitioner fails to establish any prejudice resulting from his failure to testify at trial. Accordingly, Petitioner's ineffective assistance of trial counsel claim on this issue is without merit.

### Failing to Allow Petitioner to Present Defense Witness Testimony

Petitioner contends trial counsel should have called Detective McNutt as a witness because she observed a broken window and glass on top of Ms. Fabela's body. Respondent has attached preliminary hearing testimony of Detective McNutt. *See* Response, Exhibit M. Detective McNutt testified that there was some glass from a broken window "located on the floor behind the table where the victim was." *Id*. at 67-68. Detective McNutt opined that the broken glass occurred "when the air conditioning unit was pushed back through the window during the struggle." *Id*. at 68. Detective McNutt further testified that there were small pieces of glass all over the floor, on top of the table and on the victim. *Id*. After the body had been removed, Detective McNutt did not observe any glass underneath where the victim had been. *Id*. at 69.

---

[13]This unpublished opinion is referenced for its persuasive value in accordance with 10th Cir. R. 36.3(B).

To establish ineffective assistance of counsel, Petitioner must overcome the strong presumption that counsel's decisions "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation omitted).   As previously set forth, testimony of the medical examiner, Dr. Choi, negated any inference that the victim died as the result of falling into a window.   To the contrary, Dr. Choi testified that the victim died as a result of injuries caused by a blunt force, such as the wielding of an ax.   In addition, the eyewitness testimony and Petitioner's own admission to police constituted overwhelming evidence that the victim died as a result of being hit by Petitioner with an ax.   Petitioner cannot demonstrate that defense counsel's failure to call Detective McNutt was either deficient or prejudicial.   This claim, therefore, is without merit.

### Acting Upon a Belief that Petitioner Was Guilty

As his final claim of ineffective assistance of trial counsel, Petitioner contends without elaboration that trial counsel adopted and acted upon a belief that he was guilty of first degree murder.   In other words, Petitioner contends trial counsel conceded his guilt.   During opening statement, Petitioner's counsel ended by saying:

> [W]hat you will see from the evidence is that what happened on that night was not Malice Aforethought Murder in the First Degree and we will ask you to find him not guilt of that crime.

Tr. Vol. II at 189.   Therefore, from the beginning of the trial, defense counsel's strategy was to attempt to persuade the jury to convict Petitioner of the lesser offense of heat of passion,

second degree murder.[14]  This strategy is evident throughout defense counsel's examination of witnesses.  In closing, defense counsel reiterated that "Sylvia Fabela died in the heat of passion" and requested the jury not to find Petitioner guilty of first degree murder.  Tr. Vol. V at 59.

The plentiful evidence against Petitioner presented trial counsel with a daunting task. To confront this task, trial counsel decided to contest the most serious charge, first degree murder.  While this strategy may not have been perfect, it does not rise to the level of deficient performance.  *See, e.g., Turrentine v. Mullin*, 390 F.3d 1181, 1207-1208 (10th Cir. 2004) (where evidence of guilt is overwhelming, persuading jury that defendant did not have the intent to commit first degree murder does not constitute constitutionally deficient performance).[15]  This claim, therefore, should be denied.

## **Voluntariness of Petitioner's Statement to Police**

Petitioner also contends that trial counsel was ineffective for not challenging the voluntariness of his statement to police.  The trial court conducted a hearing pursuant to

---

[14]Defense counsel also emphasized Petitioner's alcoholism and his intoxication on the night of the crime as grounds for finding Petition not guilty of first degree murder.

[15]In  *Florida v. Nixon*, 543 U.S. 175 (2004), the United States Supreme Court held that *Strickland* applies in determining whether defense counsel's failure to obtain defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial constitutes ineffective assistance of counsel.  In so holding, the Court reversed the Florida Supreme Court's application of a presumption of prejudice, *see United States v. Cronic*, 466 U.S. 648 (1984), reserved for cases in which counsel fails meaningfully to oppose the prosecution's case.  This result is consistent with Tenth Circuit precedent addressing this issue. *See Turrentine*, *supra*.  Therefore, *Strickland* governs Petitioner's claim.

*Jackson v. Denno*, 378 U.S. 368 (1964), and determined Petitioner's statement to police was voluntary.  Tr. Vol. IV at 8-45.  The trial judge stated his findings as follows:

> Based on everything that I have heard from all of the witnesses, including the defendant's own statement, it appears to this Court that the police detectives made no promise of leniency, made no threats against this defendant.  In fact, the defendant said that everything that he said to the police was the truth, they treated him kindly, which supports the position that they did not use any coercive tactics with him.
>
> Based on all of the testimony of all of the witnesses, including the defendant, that these were free and voluntary statements made to the police, that he understood his rights, that he didn't have to talk to the police if he didn't want to and therefore under *Jackson v. Denno* the statements by the defendant will be allowed.

Tr. Vol. IV at 44-45.

Petitioner contends counsel failed to establish that medication he was taking for pain at the time he gave his statement rendered his statement involuntary.  However, on cross-examination, the prosecutor specifically asked Petitioner:

> Q    The medicine you were on did not affect your ability to decide whether you needed to talk to the police or not?
>
> A    No at that moment no.  I just felt desperate and I was not able to speak normal.

Tr. Vol. IV at 41.

Petitioner further contends that defense counsel's questioning was "goal oriented toward establishing that Petitioner's statements to police were voluntary" and that  counsel failed to advance "mitigating evidence" to show Petitioner's confession was involuntary. *See* Reply at 43-44.  However, the record demonstrates that defense counsel asked pertinent questions to Petitioner about the voluntariness of his statements to police.  Tr. Vol. IV at 36-

38. Contrary to Petitioner's assertion, these questions were not "goal oriented" toward establishing the statement was voluntary.  Rather, the questions were open ended, leaving Petitioner the opportunity to offer any facts that might suggest his statement was involuntary. *See, e.g., Lucero v. Kerby*, 133 F.3d 1299, 1311-1312 (10th Cir. 1998) (denying habeas relief where record demonstrated the petitioner's statements to police were voluntary and the petitioner failed to offer additional facts which, if proven true, would render his statement involuntary).[16]  Petitioner has failed to establish deficient performance, and this claim should be denied.

In sum, Petitioner has failed to establish that his trial counsel rendered ineffective assistance of counsel in violation of Petitioner's Sixth Amendment rights.

## Ground Six – State's Failure to Disclose Toxicology Report

Petitioner claims in Ground Six of the Petition that his due process rights were violated under *Brady v. Maryland*, 373 U.S. 83 (1963), because the State failed to disclose a toxicology report that purportedly showed the victim had cocaine in her system on the night of the murder.  This claim was not raised until state post-conviction proceedings and, therefore, the state courts deemed the claim procedurally barred.  *See* Response, Exhibits D and E.  As with Petitioner's ineffective assistance of trial counsel claims, Petitioner alleges ineffective assistance of appellate counsel as cause to overcome the procedural bar and, therefore, the merits of this claim are reviewed.

---

[16]As the Tenth Circuit noted in *Lucero*, the appropriate habeas relief for violations of the constitutional guarantees provided by a *Jackson v. Denno* hearing is a remand to the trial court for a new hearing.  *Id.*, 133 F.3d at 1310.

According to Petitioner, the toxicology report would have shown that the victim was high on cocaine and initiated the altercation.  Petitioner's only evidence of this alleged toxicology report is based upon a hearsay statement made to Petitioner by an individual named Pocco and his wife while visiting him in the Oklahoma County Detention Center. According to Petitioner, Pocco's wife worked for an attorney in Oklahoma City.  Other than this fact, Petitioner does not state how Pocco's wife had access to information about this alleged toxicology report.

*Brady v. Maryland* provides that the State's suppression of "evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment."  "[T]o establish a *Brady* violation, a habeas petitioner must show that (1) the prosecutor suppressed evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material." *Knighton v. Mullin*, 293 F.3d 1165, 1172 (10th Cir. 2002) (citation and internal quotation omitted).

Here, the record demonstrates the State provided defense counsel with a copy of the Medical Examiner's Report which included information about the toxicology exam performed as part of the autopsy of the victim.  *See* Response, Exhibit H, State's Response to Application for Post-Conviction Relief, Exhibit C attached thereto.  In addition, at trial the medical examiner, Dr. Choi, testified that there was no sign of alcohol in the victim at the time of her death according to the toxicology report.  Tr. Vol. IV at 159.  Dr. Choi did not provide any testimony about the existence of cocaine in the victim's system.

Petitioner's *Brady* claim fails under the first element because Petitioner has failed to establish the existence of any toxicology report not disclosed by the State. His unsupported conclusory allegations that such a report exists are insufficient. In addition, Petitioner has not demonstrated that purported information of the victim's cocaine use was material. "Generally, evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Knighton*, 239 F.3d at 1172 (citation omitted). As previously set forth, ample evidence demonstrated that Petitioner struck the victim multiple times with an ax. There was no testimony that Petitioner acted in self-defense. Accordingly, even assuming the victim had used cocaine, this does not create a reasonable probability that the result of the proceedings would have been different had the information been disclosed to the defense. Ground Six of the Petition, therefore, should be denied.

**Ground Seven – Ineffective Assistance of Appellate Counsel**

In Ground Seven, Petitioner alleges appellate counsel was ineffective for failing to raise the claims raised in Grounds Five and Six of the Petition. In addition, Petitioner contends appellate counsel was ineffective for failing to consult with him through an interpreter.

The ineffective assistance of appellate claims were rejected by the state courts in Petitioner's post-conviction proceedings. Affirming the denial of this claim, the OCCA, citing *Strickland v. Washington*, *supra*, determined the record did not support this claim. *See* Response, Exhibit E, OCCA Order Affirming Denial of Post-Conviction Relief at 2. Where,

as here, the state court has addressed the petitioner's claim of ineffective assistance of appellate counsel, the AEDPA "confines [the court's] review to the question of whether the OCCA's decision was contrary to or involved an unreasonable application of *Strickland*." *Turrentine v. Mullin*, *supra*, 390 F.3d at 1202.

As analyzed in relation to Ground Four of the Petition, Petitioner's ineffective assistance of trial counsel claims are without merit.  Therefore, he has failed to establish ineffective assistance of appellate counsel for failing to raise these claims on direct appeal. Similarly, as analyzed in relation to Ground Five, Petitioner's *Brady* claim is without merit and Petitioner has failed to establish that appellate counsel was ineffective for failing to raise the *Brady* claim on direct appeal.  The OCCA's adjudication of these ineffective assistance of appellate counsel claims is neither contrary to nor an unreasonable application of *Strickland*.

Petitioner additionally claims that appellate counsel was ineffective for failing to consult with him through an interpreter.  Petitioner contends that "[a]ppellate counsel's failure to use an interpreter deprived Mr. Fabela of an opportunity to relate important off the record facts to his appellate attorney."  *See* Petition at unnumbered page 10.  Petitioner does not elaborate upon the nature of these facts.  However, in his application for post conviction relief, Petitioner attached an affidavit, translated by an individual named Victor Chevere, wherein Petitioner contends his wife fell against a broken window and a table and hit herself with the ax.  He alleges other facts purportedly indicating his desire to assert a claim of self-defense.  He contends his wife started an argument between them, his wife retrieved the ax

38

in the initial instance, and his wife swung the ax at him.  He contends they were both holding onto the ax when he told her to let go.  *See* Response, Exhibit G, Application for Post-Conviction Relief, Exhibit A attached thereto.

To the extent these are the "off the record" facts which Petitioner contends he would have communicated to his appellate counsel had an interpreter been provided, his claim lacks merit.   As previously set forth, Petitioner knowingly and voluntarily made the decision not to testify at trial.  No eyewitness testimony at trial supports Petitioner's version of events. Therefore, Petitioner fails to establish that he was prejudiced by appellate counsel's failure to ascertain these facts through the aid of an interpreter.

In sum, the OCCA's adjudication of Petitioner's ineffective assistance of appellate counsel claims is not contrary to or an unreasonable application of *Strickland*.   Therefore, Ground Seven of the Petition should be denied.

## **Pending Motions**

Petitioner has filed a Motion to Stay Habeas Proceeding Pending Disposition of Petitioner's Motion for Appointment of Counsel [Doc. #4] and a Pro Se Motion for Appointment of Counsel and Brief in Support [Doc. #5].   It is recommended that these Motions be denied.

Petitioner contends counsel should be appointed primarily because he is Hispanic, cannot speak or understand the English language and was appointed an interpreter at trial. In addition, he contends the trial court's denial of his request for a copy of his trial transcripts at public expense has prejudiced his ability to present his claims.  Petitioner further contends

39

appointment of counsel is necessary so that he can adequately develop his *Brady* claim.  He contends that an appointed attorney would help him locate the witness who purportedly had knowledge of the toxicology report evidencing the victim's use of cocaine.  Finally, Petitioner contends appointment of counsel is necessary because the Tenth Circuit Court of Appeals has granted relief to an Oklahoma prisoner on a claim he contends is identical to the claim raised in Ground Two of the Petition.

There is no constitutional right to counsel in a habeas corpus proceeding.  *Swazo v. Wyoming Dept. of Corrections State Penitentiary Warden*, 23 F.3d 332, 333 (10th Cir. 1994).  Rather, "[c]ounsel must be appointed for an indigent federal habeas petitioner only when the interests of justice or due process require it." *Knight v. Hopkins*, 828 F.Supp. 680 (D.Neb.1993); *see also* 18 U.S.C. § 3006A(a)(2)(B) (providing for appointment of counsel in habeas proceedings for persons financially eligible if the interests of justice so require).

Here, Petitioner has failed to demonstrate the need for appointment of counsel.  His inability to speak English is insufficient as the record demonstrates Petitioner has thoroughly addressed the issues raised, both in his Petition and in his Reply, and has not demonstrated any difficulty with timely submission of his pleadings.  Moreover, Petitioner has not shown how his inability to obtain transcripts of the state court proceedings has interfered with his ability to present his claims.  As to the other reasons asserted by Petitioner, the Court has analyzed the claims in the context of reviewing the merits of the Petition and found none of these claims would entitle Petitioner to federal habeas relief.  Petitioner has failed to

demonstrate how appointment of counsel would further assist him in the presentation of his federal habeas claims, and his Motion to Stay and Motion for Appointment should be denied.

**Request for Evidentiary Hearing**

Petitioner requests an evidentiary hearing on the merits of his ineffective assistance of counsel claims and his *Brady* claim. *See* Reply [Doc. #14] at 44-45. His request should be denied.

The AEDPA restricts the availability of evidentiary hearings when a habeas petitioner fails to develop the factual basis of his habeas claim in state court. *See* 28 U.S.C. § 2254(e)(2)(A)(i)-(ii). But when a petitioner diligently attempts to develop the facts in state court, the AEDPA's standard does not apply. *See Williams v. Taylor*, 529 U.S. 420, 437 (2000); *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998).

In state court, Petitioner acted with diligence to develop the underlying facts. *See* Response, Exhibit G, Application for Post-Conviction Relief at 16 (seeking an evidentiary hearing). Thus, to justify an evidentiary hearing under the pre-AEDPA standard, the Petitioner must satisfy two requirements. First, he must make a threshold showing of "allegations which, if proved, would entitle him to [habeas] relief." *Stouffer v. Reynolds*, 168 F.3d 1155, 1168 (10th Cir. 1999). Second, the Petitioner is entitled to an evidentiary hearing "only if there is a factual dispute." *Fox v. Ward*, 200 F.3d 1286, 1302 (10th Cir. 2000).

Petitioner is not entitled to an evidentiary hearing on the claims of ineffective assistance of counsel because proof of the allegations would not support habeas relief. *See Stouffer*, 168 F.3d at 1168 ("[B]efore a hearing is mandated, we recognize Petitioner must

41

also satisfy the second *Strickland* hurdle, whether he has been prejudiced by counsel's alleged ineffective assistance ."); *see also* discussion *supra* at 26-36.   Similarly, Petitioner is not entitled to an evidentiary hearing on the *Brady* claim because assuming the toxicology report exists, Petitioner has failed to demonstrate the toxicology report was material to the defense. For these reasons, Petitioner's request for an evidentiary hearing should be denied.

### RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied. It is further recommended that Petitioner's Motion to Stay Habeas Proceeding Pending Disposition of Petitioner's Motion for Appointment of Counsel [Doc. #4] and Pro Se Motion for Appointment of Counsel and Brief in Support [Doc. #5] be denied.   Finally, Petitioner's request for an evidentiary hearing should be denied.

### NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by February   20th  , 2006.   *See* Local Civil Rule 72.1.   Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.   *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

### STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred by the District Judge in this matter and terminates the referral.

DATED this __30th__ day of January, 2006.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE